# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEJANDRO VELASCO GONZALEZ, | Case No. 5:26-cv-03401-AJR |
| Petitioner, | **MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |
| v. | |
| MARKWAYNE MULLIN, ET AL., | |
| Respondents. | |

## I.

## INTRODUCTION

On June 18, 2026, Petitioner Alejandro Velasco Gonzalez (A# 205-721-136) ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody.  (Dkt. 1 at 2-3.)  On June 29, 2026, Respondents Markwayne Mullin, Secretary of the U.S. Department of Homeland Security ("DHS"), Rodney S. Scott, Commissioner of U.S. Customs and Border Protection ("CBP"), Jaime Rios, Acting Field Office Director for U.S. Immigration and Customs Enforcement ("ICE"), Eddy Wang, Special Agent in

Charge for Los Angeles, Homeland Security Investigations ("HSI"), ICE, James Janecka, Warden of the Desert View Facility, and Todd Blanche, Acting Attorney General of the United States (collectively, "Respondents") filed an Answer in which they stated, "The Respondents are not presenting an opposition argument with respect to providing Petitioner a bond hearing at this time." (Dkt. 7 at 2.) The Answer does not contain any response to the Petition. (Id.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 3, 9.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on Petitioner's prior conditions of release.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the Petition, which is verified by counsel. (Dkt. 1 at 17.) Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. (Dkt. 7.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner was born in 1985 and has resided continuously in the United States for more than 20 years. (Dkt. 1 at 7.) He is 40 years old and lives in the Inland Empire region of Southern California. (Id.) Petitioner lives with his partner and is the father of three U.S. citizen children, ages 18, 16, and 15. (Id.) Petitioner's eldest son is a member of the U.S. military. (Id.) Because Petitioner's son is a service member, Petitioner is eligible to apply for Military Parole in Place, which is a discretionary benefit DHS extends to the immediate relatives of U.S. service members. (Id.) Petitioner is the primary financial and emotional support for his

2

family. (Id.) Petitioner's detention has imposed severe hardship on his U.S. citizen spouse and children. (Id.)

According to the Form I-213, Petitioner last entered the United States without inspection on an unknown date at an unknown place. (Id.) Petitioner has never been admitted at a port of entry as an "arriving alien" and has never been placed in expedited removal proceedings. (Id. at 7-8.) On October 2, 2013, ICE served Petitioner with a Notice to Appear (Form I-862) charging him as removable under Immigration and Nationality Act ("INA") Section 212(a)(6)(A)(i) as a noncitizen present in the United States without admission or parole. (Id. at 8.) On the same day, ICE released Petitioner from custody and placed him in the Intensive Supervision Appearance Program ("ISAP"), which is a community-based alternative to detention. (Id.)

Petitioner has no criminal convictions and the Form I-213 expressly states that he "has no criminal history." (Id.) Petitioner's only domestic arrest, by the Bell Police Department on or about September 28, 2013, for an alleged violation of California Penal Code § 273.5, was dismissed on October 1, 2013, for insufficient evidence. (Id.) No charges resulted in a conviction. (Id.) On September 3, 2015, Petitioner was apprehended by ICE and placed in removal proceedings. (Id.) Petitioner's removal proceeding were subsequently administratively closed and he remained in the community, complying with all immigration obligations for years. (Id.)

On April 16, 2026, ICE officers were conducting a fugitive operation targeting an unrelated individual. (Id. at 9.) According to the Form I-213, ICE officers encountered Petitioner, who was not the target of the operation, arrested him as a collateral arrest, and then transported him to the San Bernardino ICE sub-station for processing. (Id.) On April 28, 2026, the Immigration Court granted DHS's motion to re-calendar Petitioner's previously administratively closed removal proceedings under INA Section 240. (Id.) Petitioner has been detained at the

3

Adelanto Detention Center throughout this process. (Id.) While in custody, Petitioner requested a custody redetermination. (Id.) On June 17, 2026, the Immigration Court denied bond based on lack of jurisdiction and found that Petitioner was subject to mandatory detention. (Id. at 9-10.)

## III.
## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief is that Petitioner is being detained in violation of the Immigration and Nationality Act ("INA") because he is not subject to mandatory detention. (Dkt. 1 at 12-13.) Petitioner's second claim for relief is that his detention without a bond hearing violates his due process rights under the Fifth Amendment. (Id. at 13-14.) Petitioner's third claim for relief is that his prolonged detention without a bond hearing violates his due process rights under the Fifth Amendment. (Id. at 14.) Petitioner's fourth claim relief is that his detention without a bond hearing violates the Administrative Procedure Act ("APA") and is contrary to statutory authority. (Id. at 15.)

Petitioner seeks immediate release from custody or in the alternative, a bond hearing within seven days at which the Government bears the burden of proof by clear and convincing evidence. (Id.) Petitioner also seeks a declaration that his detention violates the INA and the Due Process Clause of the Fifth Amendment. (Id.) Petitioner seeks in the alternative, immediate release on reasonable conditions of supervision. (Id. at 16.) Petitioner also seeks an aware of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). (Id.)

## IV.
## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that

these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions

5

which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.'").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner has resided continuously in the United States for more than 20 years.  (Dkt. 1 at 7.)  It is further undisputed that on October 2, 2013, ICE released Petitioner from custody and placed him in the ISAP.  (Dkt. 1 at

8.)[1]  (Id.)  It is also undisputed that Petitioner has no criminal history.  (Id.)  Thus, the Court concludes that once Petitioner was released from custody and placed in the ISAP, he acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country.").  Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted).  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the more than 20 years he spent out of custody building a life for himself in the United States.  See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").  Indeed, it is undisputed that Petitioner lives with his partner in the Inland Empire and is the father of three U.S. citizen children, the eldest of whom is a member of the U.S. military.  (Dkt. 1 at 7-8.)  Petitioner's undisputed ties to the community further strengthen his liberty interest in remaining out of custody.  See, e.g., Garcia v.

---

[1] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that Petitioner was likely to appear for any future proceeding.  See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

7

Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was detained without notice or a pre-deprivation hearing.  (Dkt. 1 at 9.)  Thus, the Court concludes that Petitioner's detention by ICE on April 16, 2026, without notice or a pre-deprivation hearing, violated his procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's prior release from custody in the ISAP.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy."  Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him

8

detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[2] See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews

---

[2] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor.  Under the second Matthews factor, the risk of erroneous deprivation is very high because the Immigration Court previously denied bond based on lack of jurisdiction on June 17, 2026.  (Dkt. 1 at 9-10.)  Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided.  See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community."). Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being re-detained in violation of his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[3]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v.

---

[3] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

Janecka, Case No. EDCV 25-03442-KK-MBK, Dkt. 22 (C.D. Cal. June 3, 2026) (rejecting objections to permanent enjoining requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees and costs under the EAJA.  (Dkt. 1 at 16.)  The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action.  See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").  In sum, the Court GRANTS the relief clearly sought in the Petition.  (Dkt. 1 at 15-16.)  The only response provided by Respondents is that they "are not presenting an opposition argument with respect to providing Petitioner a bond hearing at this time."[4]  (Dkt. 7 at 2.)  However, the Petition is not limited to seeking

---

[4] The fact that Respondents do not oppose a post-hoc bond hearing does not remedy the violation of Petitioner's procedural due process rights.  See, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").  Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid."  Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)).  Thus, the Court concludes that only return to the status quo can remedy the violation of Petitioner's due process rights in this case.

a bond hearing.  (Dkt. 1 at 15-16.)  Respondents' failure to address Petitioner's clearly presented claims for relief constitutes consent to the granting of the relief requested.  See C.D. Cal. L.R. 7-12.  The Court also concludes that Petitioner has established a *prima facie* case entitling him to the relief requested and Respondents declined to present any fact or argument to oppose the requested relief.  Thus, the Court concludes that Petitioner is entitled to the relief requested in the Petition based on the Court's consideration of the merits of Petitioner's claims, separate and apart from the fact that Respondents have consented to such relief being granted.

\\

\\

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Alejandro Velasco Gonzalez (A# 205-721-136) ("Petitioner") from custody on his prior conditions of release (only those conditions in place prior to Petitioner's April 16, 2026 re-detention). Respondents shall also immediately return any confiscated property and documents to Petitioner upon release.  Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing.  The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  The Immigration Judge must conduct an individualized assessment of Petitioner's

suitability for bond in light of the forgoing standard.  Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.


DATED:   July 6, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

13